UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80913-Civ-Marra/Johnson

DAVID H. MORESHEAD,

     Plaintiff,

v.

MICHAEL OTT, individually,
RIC L. BRADSHAW, as SHERIFF
of PALM BEACH COUNTY, Florida,
and WENDY'S/ARBY'S GROUP, INC.,
a foreign profit corporation,

     Defendants.

_____/



### ORDER AND OPINION GRANTING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendants Ott and Bradshaw's Motion for Summary Judgment [DE 30]. The motion is fully briefed and ripe for review. The Court has carefully considered the relevant filings and is otherwise fully advised in the premises.

**Undisputed Facts**

The facts leading up to Plaintiff's arrest are largely undisputed. On March 12, 2008, Corporal Greco ("Greco") was dispatched at approximately 3:00 p.m. to Ms. Anne Dorthe Concepcion's ("Concepcion") house. Greco was advised by Concepcion that her wallet was missing from her unlocked car in her driveway which contained, among other things, her MasterCard credit card. Concepcion advised Greco that she contacted the credit card company and found that the card had been used the day

before, March 11, 2008, at a Chevron, a Taco Bell and at a nearby Wendy's at approximately 9:02 p.m. in the amount of $15.91. Concepcion advised Greco that she went to Wendy's by herself before he arrived and saw the individual on Wendy's security video and believed him to be David Moreshead ("Plaintiff" or "Moreshead"), a neighbor who lives around the corner from her residence. *See* Ott depo., Ex. 2.

The Wendy's employee operating the video system told Concepcion that the times on "the registers are different from the [video] monitor," and "they didn't go by the time anyway, they only go by the amount." Concepcion depo. 16; Barry depo. 15-16. Concepcion testified at her deposition that the Wendy's employee told her that the person Concepcion believed to be Moreshead was the person who conducted the fraudulent transaction. Concepcion depo. 18-19, 54-56, 58. The Wendy's employee, Jerri Barry ("Barry"), testified at her deposition that Concepcion knew that the transaction amount was $15.91 and that it was her neighbor who had stolen her card, and that she just wanted to see the video.[1] Barry depo. 10-15. Barry put the transaction amount of $15.91 into the T-Log (transaction log) computer system and it pulled up "quite a few" transactions for $15.91 for March 11, 2008. Barry depo. 17-18. Barry and Concepcion watched the security video but they did not review the tape by the transaction amount. Barry depo. 18. By watching the video,

---

[1] It was Greco's understanding Concepcion obtained the time and amount of the fraudulent transaction from her credit card company, and that the Wendy's manager "matched it up with video." Greco depo. 34-35.

Concepcion picked out the person she believed stole her credit card. Barry depo. 19.

Concepcion provided a handwritten statement to Greco which reads in its

entirety as follows:

> On 03-12-08 I looked for my wallet in my car where I had
> left it and found it gone. No one have (sic) used my car
> but me. I called my credit card company and was informed
> that my credit card had been used at Wendy's Store #2607.
> I went and looked at the vidio (sic) tape and it appears to
> me to be a naighbor (sic) of mine David Morshead (sic). I
> did not give him permission to use the card.
>
> I was also informed that the card was used at Chevron #804
> and Taco Bell.

Ott depo., Ex. 1.

On March 12, 2008, Detective Ott ("Ott") arrived at Concepcion's residence

about 30-60 minutes after Greco. Greco advised Ott that he was investigating a

vehicle burglary  where one of Concepcion's credit cards had been stolen and used at

a near by Wendy's. Greco informed Ott that the victim had seen a video at Wendy's

showing the fraudulent transaction and that she had recognized the offender as her

neighbor, David Moreshead. Ott depo. 44-46. Ott believed the fraudulent

transaction had been identified based on the purchase amount of $15.91 and that

someone at Wendy's had connected the video surveillance of Moreshead and the

transaction for $15.91. Ott did not know about the discrepancy between

Concepcion's testimony and Barry's testimony because he did not ask Barry about

that fact and she did not tell him. Ott depo. 57-58. Ott made no other investigation

or inquiry. Ott depo. 64, 75-77, 79-81.

Ott and Greco went to Wendy's to obtain a copy of the video. Ott simply asked Barry to show him the same video. Ott depo. 57-59. Ott also saw the transaction log and did not notice any discrepancy between the time stamps. Ott depo. 60-61. Ott returned to Concepcion's residence and showed her the video provided by Wendy's. Ott's report indicates that Concepcion stated while watching the video that she was 100% sure that the person using her stolen credit card was Moreshead. Ott depo. Ex. 3.

That same day, Ott observed a 1999 white Mitsubishi vehicle, noting the tag number, parked in the Moreshead's driveway. The vehicle is registered to Moreshead. Ott, while in his unmarked vehicle, watched the Wendy's video. It appeared that the vehicle in the Wendy's security video was the same vehicle parked at the Moreshead residence. Ott noted that the sticker on the lower part of the hatchback glass matched. Ott depo, Ex. 3, 6, 7. After Ott's surveillance of Moreshead's vehicle was completed, Ott believed there was probable cause for Moreshead's arrest. Ott depo. 97-98. Ott did not feel it was necessary to conduct any further investigation, but wanted the opportunity to question Moreshead and possibly obtain a confession. Id.

Thereafter, on March 14, 2008, Ott spoke to Concepcion on the telephone. Concepcion advised Ott that her husband went to Wendy's to watch the video and that he also had identified Moreshead. Concepcion depo. 6-9, 11. Mr. Concepcion

Page 4 of  19

testified that the Wendy's employee represented to him that "this is the transaction and this is the person that made the purchase." Santiago Concepcion depo. 10-11. Ott made still photographs from the security video, printed out in color, to be used during his investigation.

On March 21, 2008, Ott, Greco, and Det. Sgt. Sluth waited for Moreshead outside of his home. When Moreshead returned from a walk, Ott showed him the still photographs made from the Wendy's video. Moreshead acknowledged that the photographs depicted him using a credit card at the Wendy's drive-thru window. Greco depo. 52-53, 57-58. Moreshead did not remember the specific transaction. Moreshead also denied using a stolen credit card. Moreshead also informed Ott that he is a frequent customer of Wendy's and often pays by credit card. Ott depo. 117. Moreshead showed Ott all of the credit cards that he had with him. None of those cards matched the stolen credit card of the victim.

"Based upon my investigation coupled with a positive identification of the defendant Davie Moreshead by the victim and her husband and an admission by Moreshead that he is the person in the video provided by Wendy's of the fraudulent transaction, there [was] probable cause to charge him with one count of Fraudulent Use of Personal Identification Information and one count of Fraudulent Use of a Credit Card (less than $100.00)." Arrest Report by Det. Ott, Ott depo., Ex. 6. Ott then arrested Plaintiff. Ott depo., Ex. 6, 7.

Shortly after the arrest, Ott learned via telephone that Mrs. Moreshead had

Page 5 of  19

contacted several of her husband's credit card companies and found that he had used one of his own credit cards at Wendy's on March 11, 2008, in the amount of $13.75. Ott immediately contacted Sgt. Sluth. Sgt. Sluth confirmed that Wendy's transaction log also reflected a sale in the amount of $13.75. Mrs. Moreshead depo. 27-38, Ott depo., Ex. 5. As a result, it appeared to Ott that probable cause no longer existed for the Plaintiff's arrest.

Ott learned that MOreshead had not yet been booked into jail. Ott instructed that Moreshead's handcuffs be removed immediately and that Moreshead be advised that he was free to leave. In the meantime, Ott arrived at the jail and gave Moreshead a ride home, and apologized for the error. Moreshead depo. 70; Ott depo., Ex. 3, 6, 7.

**Standard of Review**

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Whether qualified immunity shields an official from suit is a question of law." *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008). "When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990) (citations omitted).

"When deciding a motion for summary judgment, a district court must consider

Page 6 of  19

all inferences drawn from the underlying facts in the light most favorable to the party

opposing the motion and must resolve all reasonable doubts against the moving

party." *Corbitt v. Home Depot U.S.A.*, 573 F.3d 1223, 1238 (11th Cir. 2009). The

movant "bears the initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point

out to the Court that there is an absence of evidence to support the nonmoving

party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of

production shifts and the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). According to the plain language

of Fed.R.Civ.P. 56(e), the non-moving party "may not rely merely on allegations or

denials in its own pleading," but instead must come forward with "specific facts

showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to

conduct discovery, it must come forward with affirmative evidence to support its

claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla'

of evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." *Walker v.*

*Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

### The Framework for Analysis of Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). "[Q]ualified immunity is a privilege that provides 'an immunity from suit rather than a mere defense to liability.'" *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). For this reason, the Supreme Court instructs that immunity questions should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority. *Bates*, 518 F.3d at 1242. The burden then shifts to the plaintiff to overcome the defense of qualified immunity. *Id*.

Recently, the Supreme Court ruled that Courts are no longer bound to follow the "inflexible" two-part inquiry for qualified immunity that had been required by *Saucier v. Katz*, 533 U.S. at 201-02; *Pearson*, 129 S.Ct. at 810; *id.* at 819 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").[2]

Application to the Undisputed Facts

Here there is no dispute that Ott was acting in his capacity as a Palm Beach County Sheriff's Deputy. Since Ott was performing a discretionary function, the burden shifts to Plaintiff to demonstrate that Ott violated clearly established constitutional law, *to wit*, an arrest without arguable probable cause. The existence of probable cause creates an absolute bar to an action for false arrest and false imprisonment under § 1983. *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir.

---

[2] Under *Saucier*, courts first asked a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the answer to that question is affirmative, courts next ask "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." *Id.* The court may still apply the two-part inquiry from *Saucier* when that "order of decisionmaking will best facilitate the fair and efficient disposition of [the] case." *Pearson*, 129 S.Ct. at 821. In *Pearson*, the Supreme Court stated, "[o]ur decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.*

2009); *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990). An arrest without probable cause violates the right to be free from unreasonable searches under the Fourth Amendment of the Constitution. *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998). An arrest with arguable probable cause establishes that an officer is entitled to qualified immunity from a false arrest claim. *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003).

"[W]hen the claim is that a search and seizure or arrest violated the Fourth Amendment, qualified immunity depends upon whether arguable probable cause existed. More specifically, the qualified immunity issue in such cases is not whether probable cause existed, but whether a reasonable officer possessing the information the defendant officer possessed could have believed it did. *E.g.*, *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 996 (11th Cir. 1995)." *Cottrell v. Caldwell*, 85 F.3d 1480, 1485, n.1 (11th Cir. 1996). *See also Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009) ("[a]bsent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed"); *Draper v. Reynolds*, 369 F.3d 1270, 1275 (11th Cir. 2004); *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002); *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999).

Probable cause exists where the facts and circumstances presented to a law enforcement officer would cause a prudent person to believe "that the suspect has

committed, is committing or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Arguable probable cause exists when "an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Durruthy*, 351 F.3d at 1089 (quotation marks and citations omitted). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotations marks and citations omitted).

The undisputed material facts in this case demonstrate that Concepcion's credit card was stolen and used on March 11, 2008 at Wendy's; that Concepcion told Greco that she saw a video of the fraudulent transaction and that the she believed the individual portrayed in the video using her stolen credit card was her neighbor Moreshead; that Concepcion's husband viewed the same video and affirmed that the individual in the video was Moreshead; that Greco, who conducted the initial report, told Ott that Moreshead had been identified in the video by Concepcion as the perpetrator; that Ott viewed the video himself and confirmed that the automobile in which the alleged perpetrator sat was Moreshead's automobile; and that Moreshead admitted that he was the one portrayed in the video (through a still photograph taken from the video). Viewing these facts in the light most favorable to Moreshead, they demonstrate that there was arguable probable cause to arrest Moreshead.

Page 11 of 19

A reasonable police officer could rely on the information provided by Concepcion that Wendy's had shown her a video of the fraudulent transaction and that she saw who she believed was her neighbor Moreshead. *Illinois v. Gates*, 462 U.S. 213, 233-234 (1983) ("if an unquestionably honest citizen comes forward with a report of criminal activity - which if fabricated would subject him to criminal liability - we have found rigorous scrutiny of the basis of his knowledge unnecessary"). A reasonable police officer could also believe Deputy Greco, who took the initial report, when he confirmed Concepcion's claim. Concepcion also told Ott on March 14, 2008, seven days before the Plaintiff's arrest, that her husband went to Wendy's and was also shown the video and identified the Plaintiff.

While "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause," *Rankin*, 133 F.3d at 1435, "once an officer makes an arrest based on probable cause, he need not investigate every claim of innocence." *Id.* (internal quotations omitted). An officer does not have to take "every conceivable step ... at whatever cost, to eliminate the possibility of convicting an innocent person." *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989). While a police officer should consider a suspect's explanation in evaluating the existence of probable cause, he "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Williams v. City of Homestead, Fla.*, 206 Fed.Appx. 886, 888-89 (11th Cir.

Page 12 of 19

2006) quoting with approval *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). The Supreme Court has explained: "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted - indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, (1979).

Relying primarily on *Kingsland v. City of Miami*, 382 F.3d 1220, 1230 (11th Cir. 2004) and *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988) (quoted with approval in *Kingsland*), Moreshead asserts that "Ott failed to clarify the situation and instead made an arrest without heeding certain, easily obtained information. In doing so, Ott did not bother to do what any police officer acting reasonably in the circumstances would have done." DE 37 at 9 citing *Kingsland* 382 F.3d at 1228 (internal quotations omitted).

According to Moreshead, Ott's reliance on Concepcion's understanding of Wendy's ability to identify the fraudulent transaction was unreasonable under the circumstances. Plaintiff asserts that because Ott never asked Barry how Moreshead was pinpointed as the perpetrator, he conducted an insufficient investigation and that by "turn[ing] a blind eye to exculpatory information" that was available to him, he should not be shielded by qualified immunity. DE 37 at 10-15.

In *Kingsland,* investigating officers acted in an intentional manner for the purpose of helping a fellow off duty police officer who was involved in a motor

Page 13 of 19

vehicle accident with the plaintiff that lead to her arrest. The officers in *Kingsland* intentionally ignored evidence or fabricated evidence that was material to the question of probable cause. Although officers must conduct a reasonable investigation, the question of whether an investigation is reasonable depends on the facts of each case. In addition, courts address this issue as a question of law where the material facts are not in dispute. *Cottrell v. Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996).

The undisputed material facts in this case reflect that Ott did take appropriate steps to investigate the claim by interviewing Concepcion, viewing the security video, reviewing the video with Concepcion, confirming that the automobile in the video belonged to the Moreshead, and by questioning Moreshead. While Ott did not investigate "every theoretically plausible claim of innocence," the undisputed facts also demonstrate that Ott did not intentionally ignore offered information or conduct an investigation in a biased way by electing not to obtain easily discoverable facts. *Kingsland*, 382 F.3d at 1229. The circumstances in this case are notably different and do not rise to the level of culpability or fault exhibited by the defendants in *Kingsland*. Here, there was no reason for Ott to believe that Concepcion's report of Moreshead's identification was unreliable, or that Ott intentionally did not ask Barry how she had identified the Moreshead transaction as the fraudulent transaction on the surveillance video. This is a critical distinguishing fact. In fact, other courts have distinguished *Kingsland* based upon this critical issue.

Page 14 of 19

In *Rushing v. Estate of Mincey and David Last*, No. 07-cv-955, 2009 WL 1046076 (M.D. Fla. Apr. 19, 2009), the court granted qualified immunity to the defendant officers after analyzing the facts of that case and considering *Kingsland*. The court found that there was no evidence that the defendants had any intent to conduct a biased investigation. The court reached this conclusion after considering and rejecting the argument regarding the reasonableness of the investigation, including the fact that one defendants ignored fingerprint evidence which proved that the plaintiff was not guilty. *See also, Alred v. S.J. Powell*, No. 03-CV-2683, 2005 WL 3467331, *8 (N.D. Ga. Dec. 12, 2005) (court distinguished *Kingsland* while addressing probable cause issue).

In *Gonzalez v. City of Lakeland*, No. 04-CV-889-T-17TGW, 2006 WL 1319445 (M.D. Fla. May 12, 2006), the court addressed a probable cause and reasonable suspicion question related to a traffic stop of an automobile. The court considered and rejected the application of *Kingsland* in finding that the defendants were entitled to qualified immunity. The court concluded that *Kingsland* did not apply because there was no evidence of a motive to manufacture probable cause even though a mistake had occurred during a communication with the Lakeland Police Department. The court also rejected the assertion that an improper and unreasonable investigation precluded the application of qualified immunity. The plaintiffs' relied upon the assertion that the officers ignored repeated claims that insurance papers and registration information was available in the vehicle, and that

the officers refused to answer questions immediately as to what was wrong with the registration. The plaintiffs also argued that there were factual differences in the description of the motor vehicle that was stolen and their vehicle, that the alleged thief was black while the plaintiffs were Mexican, and that the officers violated their own agency procedures. Despite these flaws in the investigation, qualified immunity was applied. Ott's investigation in this case bears no factual resemblance to the investigation conducted in *Kingsland*, and, like *Gonzalez*, there is no evidence that Ott was motivated to manufacture probable cause in this case.

There are many examples of cases that involved less than perfect criminal investigations where probable cause has been found. Some examples include: *Mills v. Town of Davie*, 48 F. Supp. 2d 1378 (S.D. Fla. 1999) (probable cause found despite challenge to validity of show up identification; physical evidence connecting the plaintiff to the crime not found on the plaintiff; plaintiff's car did not match description of car of suspect; description given by witness was not complete; plaintiff had a companion and the robbery suspect was alone; plaintiff's location at place of stop was not connected to area of K-9 search for robbery suspect; officer failed to investigate these inconsistencies before making arrest); *Rankin v. Evans*, 133 F.3d 1425 (11th Cir. 1998) (child sex abuse case, evidence based on word of young child. Reporting witness had motive to fabricate and bias against plaintiff; failure to investigate scene of abuse; failure to interview other teachers regarding the child victim's behavior, arrest made even though time was not of the essence and medical

Page 16 of 19

evidence suggested the plaintiff could not have committed the abuse); *see also Lee v. Geiger,* 419 So.2d 717 (Fla. Dist. Ct. App. 1982); *Florida Game & Freshwater Fish Comm'n v Dockery,* 676 So.2d 471 (Fla. Dist. Ct. App. 1996); *City of Clearwater v. Williamson,* 938 So.2d 985 (Fla. Dist. Ct. App. 2006).

Conclusion

Viewed in the light most favorable to Moreshead, the record as a whole shows that Ott behaved in an objectively reasonable fashion in investigating Concepcion's case. Moreshead has not met his burden to raise a genuine issue of material fact as to whether a reasonable officer in the same circumstances and possessing the same information as Ott would not have believed that probable cause existed to arrest him. Under the circumstances in this case, the Court concludes, as a matter of law, that arguable probable cause existed to arrest Moreshead. Accordingly, Ott is entitled to qualified immunity on Moreshead's § 1983 claim against him.

The Morsehead's First Amended Complaint contains four counts. Count I is titled False Arrest/False Imprisonment Claim Against Defendant Ott, Individually, Cognizable Under 42 U.S.C. § 1983, a federal claim. Count II is entitled False Arrest/False Imprisonment Claim Against Defendant Ott, Individually, a state law claim. Count III is entitled False Arrest/False Imprisonment Claim Against Defendant Palm Beach County Sheriff's Office. Count III is pled as a state law false arrest/false imprisonment claim in the alternative where it is alleged that Ott, as an employee of the Palm Beach County Sheriff's Office, while acting in the course and scope of his

Page 17 of 19

employment, falsely arrested and/or falsely imprisoned Moreshead. The fourth and final count is against Wendy's on a claim of negligence.

Because Moreshead has failed to establish a valid federal claim against Ott, Moreshead's remaining potential state or common law claims will also be dismissed. This Court derives its authority to decide Moreshead's federal claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction ...." *Id.* § 1367(c)(3).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists. *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the ... defendants, the district court correctly dismissed its remaining state law claims against these defendants"); *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law

Page 18 of 19

claims is discretionary).

Here, as the Court has determined that the claim serving as the basis for original federal court jurisdiction fails as a matter of law, the Court also concludes that any potential state law or common law claims should be dismissed without prejudice so that Moreshead may, if he chooses, pursue them in state court. Therefore, in accordance with the conclusions reached above, it is hereby

**ORDERED AND ADJUDGED** that Defendants Ott  Motion for Summary Judgment [DE 30] is **GRANTED**.  Judgment shall be entered for Defendant Ott on Count I. Counts II, III, and IV are dismissed without prejudice.  In accordance with Fed.R.Civ.P. 58, final judgment will be entered  by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of December, 2009.

KENNETH A. MARRA
United States District Judge

Copies furnished to:

All counsel of record